```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
VALDENOR REYES,                                             :
                                                            :     OPINION AND ORDER
                Plaintiff,                                  :     11 Civ. 02155 (GWG)
                                                            :
        -v.-                                                :
                                                            :
METROMEDIA SOFTWARE, INC.,                                  :
                                                            :
                Defendant.                                  :
                                                            :
------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Valdenor Reyes brings this action against his former employer Metromedia Software, Inc. on the ground that Metromedia violated his employment contract. Reyes has moved for partial judgment on the pleadings seeking a declaration that he is entitled to certain commission payments under the terms of his employment contract and that Metromedia has breached those terms.[1] For the reasons discussed below, Reyes's motion is granted.[2]

I.      BACKGROUND

   A.   Facts

The facts relevant to this motion are undisputed.

---

[1] See Plaintiff's Motion and Notice of Motion for Partial Judgment on the Pleadings, filed July 12, 2011 (Docket # 11) ("Notice"); Declaration of Scott A. Korenbaum in Support of Plaintiff's Motion for Partial Judgment on the Pleadings, filed July 12, 2011 (Docket # 12); Plaintiff's Memorandum of Law in Support of His Motion for Partial Judgment on the Pleadings, filed July 12, 2011 (Docket # 14); Declaration of Valdenor Reyes in Support of his Motion for Judgment on the Pleadings, filed July 13, 2011 (Docket # 15) ("Reyes Decl."); Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Judgment on the Pleadings, filed Sept. 9, 2011 (Docket # 17) ("Opp. Mem.").

[2] The parties have consented to having this matter decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Defendant Metromedia Software, Inc. ("Metromedia") entered into an employment contract with Reyes, which was drafted by Metromedia and is dated January 1, 1998. See Employment Agreement, dated Jan. 1, 1998 (annexed as Ex. A to Reyes Decl.); Complaint, filed Mar. 29, 2011 (Docket # 1) ("Compl.") ¶ 8. Reyes's responsibilities under the contract included selling Metromedia's "HotelEXPERT product" and providing training and support services relating to the use of that product. See Employment Agreement ¶ 1.

Paragraph 2 of the Employment Agreement, entitled "Compensation," is divided into two parts. The first part provided for compensation as consideration for "the due and faithful performance of the Services under this Agreement, and only for so long as you are an employee of the Company . . . and only for so long as you are rendering such Services to the Company." Id. ¶ 2(a). The provisions of this paragraph promise Reyes three forms of compensation: (i) commissions equal to 6% of annual "gross revenues"; (ii) $50,000 for services rendered between May 20 and December 31, 1998; and (iii) a weekly salary of $2,884.62 beginning on January 1, 1999. Id. ¶¶ 2(a)(i)–(iii). The second part provided for the issuance of 53 shares of stock to Reyes as compensation for past services. Id. ¶ 2(b).

A separate section of the Employment Agreement, ¶ 4, is entitled "Term and Termination." This paragraph provides that Reyes's employment would commence on January 1, 1998 and continue for five years unless Metromedia terminated him for cause, the possible bases for which are listed in the agreement. See id. ¶ 4(a). This section also provides that if Reyes continued to perform services after the termination date of the agreement – that is, after December 31, 2002 – without a written extension, the parties' continued employment relationship would be governed by the same terms and conditions contained in the Employment Agreement unless the parties entered into a new agreement or either party terminated the

2

existing agreement on 30 days notice. Id. ¶ 4(b).

The next section of ¶ 4 provided that if the contract were "terminated for any reason whatsoever, other than fraud, embezzlement, or gross negligence, commissions will be paid to [Reyes] pursuant to Section 2(a)(i) above for a period of seven (7) years from the date of such termination." Id. ¶ 4(c).

The parties executed a second agreement, dated November 9, 2007, entitled "Memorandum of Agreement." See Memorandum of Agreement, dated Nov. 9, 2007 (annexed as Ex. B to Reyes Decl.) ("Mem. of Agreement"); Compl. ¶ 15. The Memorandum of Agreement provided that "[i]t is the intention of both [Reyes] and [Metromedia] to extend the terms of [the Employment Agreement]" and that "[a]ll terms contained in the Employment Agreement, unless otherwise modified by this Memorandum, shall continue in effect until June 30, 2008 ("Employment Term")." Mem. of Agreement at 1. Furthermore, the Memorandum of Agreement provided that the original Employment Agreement "shall automatically be extended until December 31, 2008," unless either party notified the other of its intention not to extend the contract by May 31, 2008. Id.

The Memorandum of Agreement's substantive modifications to the Employment Agreement principally related to the terms of Reyes's agreement not to compete with Metromedia in the event the Employment Agreement were terminated and to the commissions Reyes would receive under sales contracts arising out of an agreement Reyes was then negotiating with Hilton Hotels Corporation on behalf of Metromedia. See id. at 1–3.

Metromedia terminated Reyes's employment on January 8, 2010. Compl. ¶ 28. Metromedia did not terminate Reyes's employment for any of the reasons listed in ¶ 4(c) of the Employment Agreement. Compl. ¶ 29. Metromedia paid commissions owed to Reyes pursuant

to the Memorandum of Agreement for the years 2008 and 2009, and some commissions for 2010 – presumably consisting of commissions earned prior to his termination. Compl. ¶ 24; Answer ¶ 10. But Metromedia believes it is not obligated to pay Reyes post-termination commissions. See Opp. Mem. at 9.

### B. The Instant Motion

Reyes has moved for partial judgment on the pleadings requesting a declaration that Metromedia is obligated to pay Reyes "commissions, in accordance with the terms of their Employment Agreement . . ., dated as of January 1, 1998, for seven years following the termination of his employment on January 8, 2010." Notice at 1. Reyes also requests a declaration that Metromedia breached the Employment Agreement "by failing to pay Mr. Reyes commissions, in accordance with the terms of the Employment Agreement, following the termination of his employment on January 8, 2010, to the present." Id. at 1–2.

Metromedia contends that summary judgement should be denied because it is not obligated to pay commissions to Reyes following his termination. It argues that paragraphs 2(a)(i) and 4(c) are irreconcilable or that the contract is otherwise ambiguous. Opp. Mem. at 7–16. It therefore requests the opportunity to present extrinsic evidence to resolve the alleged ambiguity or a ruling that ¶ 4(c) of the Employment Agreement is invalid. Id. at 9.

## II. DISCUSSION

### A. Principles of Contract Interpretation

Because the parties have relied on New York State law in presenting their arguments, we apply New York law to Reyes's claims. See, e.g., Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121 n.5 (2d Cir. 1998) (citing Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir. 1998)).

4

Under New York law, a court interpreting a contract must "give effect to the intent of the parties as revealed by the language they chose to use." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (citing Slatt v. Slatt, 64 N.Y.2d 966, 967 (1985)). "The proper interpretation of an unambiguous contract is a question of law for the court," Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002) (citing Seiden, 959 F.2d at 428); accord Citibank, N.A. v. Morgan Stanley & Co. Int'l, 724 F. Supp. 2d 398, 404 (S.D.N.Y. 2010), and "courts are to enforce them as written," Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995) (citing Maurice Goldman & Sons, Inc. v. Hanover Ins. Co., 80 N.Y.2d 986, 987 (1992)).

"However, when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented," LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005) (quoting Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005)). Whether a contractual provision is ambiguous or not is a "threshold question of law to be determined by the court." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (quoting Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005)). If a court determines that a contractual provision is ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." Id. at 43 (quoting Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275–76 (2d Cir. 2006)).

A contract is not ambiguous simply because the parties have urged conflicting interpretations. Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (citing cases). Rather, a contractual provision is ambiguous only "when it is

reasonably susceptible to more than one reading." U.S. Fire Ins. Co. v. Gen. Reinsurance Corp., 949 F.2d 569, 572 (2d Cir. 1991). Importantly, a court must evaluate the disputed language "in the context of the entire agreement. . . . [to] safeguard against adopting an interpretation that would render any individual provision superfluous." Sayers, 7 F.3d at 1095 (citations and internal quotations omitted).

    B.    Analysis

The Employment Agreement's provisions regarding the payment of commissions are clear and unambiguous. Paragraph 2(a)(i) governs the payment of commissions while Reyes is employed by Metromedia. See Employment Agreement ¶ 2(a)(i). Paragraph 4(c) of the Employment Agreement governs the payment of commissions in the event Reyes's employment were to terminate, and provides that Metromedia must pay him the same commissions to which he is entitled under ¶ 2(a)(i) for seven years from the termination date, unless it terminates him for certain wrongdoing. See Employment Agreement ¶ 4(c).

In the face of this apparent clarity as to the commission obligation, Metromedia argues that its obligation to pay Reyes commissions terminated when Metromedia discharged Reyes from his employment. Metromedia's main argument is that ¶ 2(a)(i) and ¶ 4(c) are "irreconcilable." Opp. Mem. at 9. To support this argument, Metromedia points to the opening sentence of ¶ 2(a), which states that Metromedia's obligation to pay Reyes a salary and commissions exists "only for so long as [Reyes is] an employee of the Company . . . and only for so long as [Reyes is] rendering . . . Services to the Company." Id. at 8. Metromedia contends that because the obligation to pay commissions pursuant to ¶ 2(a)(i) exists "only" while Reyes is an employee, Metromedia's promise in ¶ 4(c) to pay Reyes commissions after his termination is inconsistent with ¶ 2(a)(i). Essentially, Metromedia argues that the introductory description in

¶ 2(a) – referring to compensation that is to be paid during the period Reyes is employed by and rendering services to Metromedia – applies to the promise contained in ¶ 4(c), even though ¶ 4(c) addresses only the compensation Reyes would receive after he was terminated.  Under Metromedia's interpretation, therefore, Metromedia's promise in ¶ 4(c) to pay Reyes commissions for seven years after Reyes's termination was meaningless and illusory.  It could never have been fulfilled under any set of circumstances because once Reyes was terminated, Reyes would no longer be employed by Metromedia and thus would fail to come within the introductory description contained in ¶ 2(a).   Therefore, Metromedia argues, the contract is ambiguous.

      Accepting Metromedia's interpretation, however, requires a strained – indeed, almost nonsensical – reading of the contract and violates the cardinal rule that a contract should not be read to render any provision superfluous.  See Scholastic, Inc. v. Harris, 259 F.3d 73, 83 (2d Cir. 2001) ("In determining whether a contract is ambiguous, a court must look at 'the entire integrated agreement,' to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'") (quoting Sayers, 7 F.3d at 1094–95).  The structure of the contract itself, along with the contractual language, reflect that the purpose of ¶ 2(a) was to set forth the compensation Metromedia had to pay Reyes while Reyes was with the company.  It therefore makes sense that, as a means of compensating Reyes for services performed in furtherance of Metromedia's interests, the commission component of Reyes's compensation – like his weekly salary – would be available to Reyes "only" for the duration of Reyes's employment with Metromedia.

      Paragraph ¶ 4(c), by contrast, serves a different purpose: to set forth the compensation Reyes was entitled to receive in the event the employment relationship terminated.  The fact that

these commissions were to be paid post-termination, however, is not inconsistent with Metromedia's obligation to pay Reyes certain defined salary and commissions "only" while Reyes was employed. Indeed, the independent purpose and function of ¶ 4(c) are rendered all the more obvious because ¶ 4(c) <u>specifically mentions</u> ¶ 2(a)(i): that is, ¶ 4(c) ties the amount of the post-termination commissions to the very amounts that would have been due to Reyes under ¶ 2(a)(i) had he remained an employee. The drafters of the contract thus understood that, in creating the obligation to pay post-termination commissions in ¶ 4(c), they were doing so in the face of a separate obligation to pay commissions during the term of Reyes's employment.[3]

In sum, all the provisions of the Employment Agreement survive by giving the two allegedly conflicting provisions their natural readings. The "only for so long as you are an employee of [Metromedia]" condition in the opening sentence of ¶ 2(a) applies to commissions provided as compensation while Reyes worked for Metromedia. Paragraph 4(c)'s post-termination provision applies to commissions paid as termination compensation. Putting aside the clarity of the language, this interpretation, unlike the interpretation proffered by Metromedia, renders neither provision superfluous.

Metromedia makes some additional arguments relying on the later Memorandum of

---

[3] It is hardly surprising that an employer would enter into an agreement with a salesman under which the salesman is entitled to collect commissions once his employment ended. From the employee's perspective, guaranteeing post-termination commissions provides a disincentive to the employer to terminate an employee in order to avoid paying commissions that had been generated by the employee's efforts. From the employer's perspective, it incentivizes the employee to maximize the generation of sales up until the last moments of his employment, secure in the knowledge that if he quits or were suddenly terminated, he would not lose the commissions on the sales generated late in his tenure. Therefore, not only are the two provisions in the Employment Agreement not irreconcilable, the termination provision in ¶ 4(c) actually operates to ensure that Reyes will give the "due and faithful performance" of the services for which he receives salary and commissions under ¶ 2(a)(i).

Agreement, but none of them are persuasive. First, it points to a provision of the Memorandum of Agreement regarding payment of the particular class of commissions relating to the Hilton Hotel, and argues that this provision reflects on the intent of the parties to the Employment Agreement. See Opp. Mem. at 13–14; Mem. of Agreement at 2. However, in light of the fact that the Employment Agreement is unambiguous, the Memorandum of Agreement cannot be used as extrinsic evidence to cast light on the meaning of the Employment Agreement's provisions. In any event, there is nothing inconsistent about the Hilton Hotel provision in the Memorandum of Agreement, as it was clear that the Memorandum of Agreement was making special provisions for the payment of the Hilton-related commissions and was not otherwise altering the commission obligation arising from other sales. Indeed, after the discussion of the Hilton-related commissions, the Memorandum of Agreement has a separate section entitled "Other Commissions" which specifically refers to commissions "[e]xcluding commissions earned under the Hilton Agreement." Mem. of Agreement at 3. This makes clear, to the extent there could otherwise be any doubt, that the conditions imposed on Reyes's receipt of commissions under the Hilton Agreement were unrelated to Reyes's receipt of non-Hilton commissions under the Employment Agreement.

Metromedia also points to the provision in the "Other Commissions" section that obligates Metromedia to pay Reyes commissions within five days of Reyes's delivering "the monthly financial statements for the current month." Opp. Mem. at 14. Again, in light of the Employment Agreement's clarity, this provision is irrelevant to its interpretation. In any event, the provision is consistent with the Employment Agreement because the paragraph is most reasonably and naturally read as requiring Metromedia to make prompt payment to Reyes during the time he has access to those financial statements – that is, while he is employed. It thus gave

9

Reyes a right to prompt payment of his commissions under ¶ 2(a)(i) that had not previously existed.

Finally, Metromedia argues that the 'continued enforceability" of ¶ 4(b) – stating that the Employment Agreement was to continue in effect after its expiration unless one party terminated it on 30-days notice — is an "open issue" and "questionable" because "[i]t is unclear" if ¶ 4(b) survived the Memorandum of Agreement. Opp. Mem. at 15, 16. Metromedia bases this argument on the fact that the Memorandum of Agreement states in relevant part that the Employment Agreement shall "automatically be extended until December 31, 2008" but does not state what happens after that date. Mem. of Agreement at 1; see also Opp. Mem. At 15–16. Metromedia does not explain what contractual arrangement it thinks governed the parties' employment relationship after December 2008. In any event, the contractual documents are clear on this point as well: the Memorandum of Agreement states that it is "the intention of both the Employee and the Employer to extend the terms of their employment relationship" as stated in the Employment Agreement, subject to "certain modifications" contained in the Memorandum of Agreement. Mem. of Agreement at 1. The Memorandum of Agreement contains no provision modifying the Employment Agreement's general provision that if Reyes continued to provide services after the termination date of the Employment Agreement, the term of the Employment Agreement would be extended unless it were terminated on 30 days notice by either party. See Employment Agreement ¶ 4(b). Thus, the continued applicability of the Employment Agreement to the employment relationship as of Reyes's termination date is unambiguous [4]

---

[4] Metromedia finds it "odd" that under the Employment Agreement, Reyes would be entitled to receive post-termination commissions under ¶ 4(c) if he was terminated due to

Because Metromedia does not dispute that it has failed to pay Reyes for the amounts owing pursuant to ¶ 4(c) of the Employment Agreement, Reyes is entitled to partial summary judgment on the issue of Metromedia's breach.

III.   CONCLUSION

For the foregoing reasons, the plaintiff's motion for partial judgment on the pleadings (Docket # 11) is granted.

SO ORDERED.

Dated: January 4, 2012
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

criminal convictions or breach of the employment agreement as long as the conviction or breach did not involve fraud, embezzlement or gross negligence. See Opp. Mem. at 14–15. Accepting arguendo the assertion that such a situation is "odd," its purported oddness does not render ambiguous the contractual provisions at issue in this motion.

Because Metromedia does not dispute that it has failed to pay Reyes for the amounts owing pursuant to ¶ 4(c) of the Employment Agreement, Reyes is entitled to partial summary judgment on the issue of Metromedia's breach.

III.   CONCLUSION

For the foregoing reasons, the plaintiff's motion for partial judgment on the pleadings (Docket # 11) is granted.

SO ORDERED.

Dated: January 3, 2012
       New York, New York

                                              GABRIEL W. GORENSTEIN
                                              United States Magistrate Judge

---

criminal convictions or breach of the employment agreement as long as the conviction or breach did not involve fraud, embezzlement or gross negligence. See Opp. Mem. at 14–15. Accepting arguendo the assertion that such a situation is "odd," its purported oddness does not render ambiguous the contractual provisions at issue in this motion.